The next case today is United States v. Luis Rivera-Ruiz, appeal number 19-1992. Attorney Novas, please introduce yourself for the record and proceed with your argument. Yes, good morning again. My name is Jose Luis Novas and I represent Appellant Mr. Luis Rivera-Ruiz. In this case, we're arguing that the sentence imposed by the district court is procedurally unreasonable for various reasons. The first of which is because it relied on evidence which was not disclosed to Mr. Rivera prior to the sentencing hearing. That was the evidence regarding that a number of witnesses who purportedly engaged in criminal conduct had told the prosecutor that they were frequently hit up for money by Mr. Rivera to the point that they were like Mr. Rivera's ATM machines. So that was sprung up on the defense at the sentencing hearing. The court also improperly relied on evidence of a number of administrative complaints as a police officer against Rivera, all of which except one had been dismissed. And as the court well knows, it is well settled that district courts may not factor unproven charges into their sentencing decisions without first finding by preponderance of the evidence that the conduct underlying the charges actually took place. Nonetheless, the transcript for proceedings during the sentencing hearing clearly shows that when the court chose to depart, or rather to vary from the applicable guidelines, it did rely on both instances of information which it should not have relied upon. A specific example of that is when the court stated, and I quote from the sentencing hearing transcript, that Mr. Rivera, and here starts a quote, he has a complaint for threats with firearms, several counts of illegal searches, as well at the administrative level. We don't think that was proper, not without finding by preponderance that the conduct underlying those charges had taken place. So the unreliability of both sets of information to our mind precludes a plausible sentencing rationale and does not embody a defensible result. And because, just because of this, the sentencing post we believe is procedurally unreasonable. But that is not the only grounds that made this sentence procedurally unreasonable. It was also so that it's unreasonable because it failed to provide a plausible explanation for the substantial variance. The variance was a 33-month upward departure, and we base this proposition in the fact that the sentencing court indicated, for instance, that it would not consider the fact that the individuals involved in criminal conduct considered themselves to be Mr. Rivera's ATM machine. The court also said that it would not consider the instance when Rivera and another officer met at the drug point with a drug dealer, where the other officer showed a picture of an individual to the drug dealer and told the drug dealer that that was an informant. The prosecutor recounted that event at the sentencing hearing and also recounted how this person was later murdered. The court was emphatic that it had not relied upon that, any of this information, but that is belied by the record. It is belied by the record, for instance, at page 24 of the sentencing hearing transcript, the court states, and I quote, a number of victims that we still don't have for certain, but are numerous. So that incongruity, to our mind, causes the sentence upon its face to lack a plausible explanation, justifying that substantial upward variance. And lastly, uh, we believe the sentence is also procedurally unreasonable because the district court actually used heartland conduct. Uh, I mean, that's offense conduct right within what the guideline contemplates to justify the variance. We know that racketeering acts can cover a very wide spectrum of offenses from the less serious, uh, for instance, loan sharking, uh, to the more serious that could be violent acts in furtherance of organized drug trafficking. If we look at the guideline that applies for violation of civil rights under color of authority, which is exactly the conduct that Mr. Rivera admitted in the plea agreement, the two instances of taking money from, um, vehicles or individuals that they have stopped as police officers. Uh, those are section 2H 1.1 of the guideline talks about offenses in the involving individual rights. Mr. Novak? Yes, sir. If I could take you back to the administrative complaints, please. The, um, as best I can tell from the briefs, we've never had a case in which the issue was posed of the propriety of a sentencing judge relying on internal department complaints. We have had cases in which a sentencing judge relied on arrests, and we've set down some restrictions regarding that. As I understand it, you're making an analogy. You're suggesting we should treat administrative complaints like arrests, that something needs to be more before the judge, like the judge did here, could point to them. Could you address the basis for that analogy? In other words, why should we treat administrative complaints the same as arrests? Your Honor, because both deal with prior conduct that is a foul of the law. Um, uh, uh, arrest records will regard, um, um, criminal conduct. Let me see if I can direct you some more. Do we, do we have anything that we can point to that tells us how an administrative complaint gets filed? Can any citizen file? Any officer? Is there any, uh, threshold level that the proof needs to get over? What do we know, if anything, about administrative complaints, or do we just know nothing from this record, Your Honor, in the sense that they're just, there's mention of administrative complaints. Um, we know that from the record that they were initiated by citizens, and we know from the record that, uh, they were, they did not progress, all except one for which he was sanctioned. And so there's, as to all of those which were dismissed, um, it would appear from the record and from the, um, sentencing proceedings that the court indeed, um, um, drew a comparison between those dismissed charges and the offense conduct, because basically it's, it's the administrative complaints were based on their, um, um, civil rights violations, theft of money from individuals by a police officer acting under color of law. Um, it's just at an administrative level that will generate responsibility as to, you know, not civil, but as to employment terms and suspensions and lack of pay, it will not land the person in jail, but it's, it's conduct that also, um, could generate criminal liability. So we think it's very, um, um, the analogy is, um, is a fair one. And what, what's good for the geeks is good for the gander. If, if one side, we cannot look at arrest records when there's no reliable, um, information that may set some facts, we cannot do so in a setting like this, although it was administrative, administrative, um, um, it's the same, the same consideration. Counselor, are you aware of whether this is, uh, unusual to list in a PSR, these administrative complaints? No, I'm not aware that it's unusual, Your Honor, but simply because this may be the first or recent recollection instance of a police officer that I've had to represent under similar circumstances. I just don't recall. Um, and I certainly found no case law that justifies or supports the analogy, but nonetheless, I think it's persuasive. Did you file a written objection to the PSR? No, Your Honor. We did not do so because the PSR reflected correctly that all of them were dismissed and we were conscious of the fact that the court or cognizant of the fact that the court, it would have been improper for the court to start looking into those and use them as a basis to ramp up punishment, but that's exactly what happened. Mr. Novus, um, your time has expired. Anything further from you at this point? No, Your Honor. All right. Thank you. If you would mute your audio and video. Of course. We'll hear from Ms. Cohen. Attorney Cohen, please introduce yourself to begin, uh, put us back on the record. May it please the court, Alex Cohen for the United States. The sentencing judge did not commit any procedural error here. The court explained its rationale for the sentence at length, and those reasons came from the undisputed facts in the PSR and from the plea agreement. Specifically, the court outlined the many different abuses of authority that this enterprise committed, which came from paragraph 36 of the PSR and found those acts to be so blatant and so damaging to the Puerto Rico police force and the judiciary that it warranted the upward variance. What was the point of those, uh, three gratuitous, uh, assertions of, uh, other improper conduct The government brought up those facts only to respond to Rivera's argument that he made in his sentencing memorandum and also at the sentencing hearing that he was only involved in two isolated transgressions in an otherwise prolific and admirable career. So the government was simply putting in context his assertion that he made in the sentencing memorandum that he was just The assertions were reliable because they were thorough, they were sufficiently detailed to be under the ambit of this court's opinion in Rodriguez, where a sentencing court was permitted to rely on an AUSA's proffer, even though uncorroborated, because they were sufficiently thorough and replete with detail. But even if they were not proper, the court made clear in the record it did not rely on them. Specifically, the judge said three separate times that she was not of the appendix, that had she considered them, she would have imposed an even higher sentence. In addition, it's clear that the judge didn't rely on them because her explanation for the sentence was so thorough and so comprehensive and came directly from the paragraphs of the PSR that the judge even referenced, which were paragraphs, predominantly paragraphs 30 to 36, outlining the many different methods and means of this RICO enterprise. So, Ms. Cohen, how do you, do you agree that if there were a reference to five arrests that led to nothing, the district court judge could not have relied on those without more findings about the substance of the conduct? And if so, how do you then distinguish the court's reliance here on the administrative complaints? I agree that the court could not equate an arrest with guilt, but I don't agree that there would be any issue with just referencing an arrest, as this court said in Miranda Diaz, merely referencing one is permissible. And here, assuming that an administrative complaint should be equated with an arrest, the court did not make any conclusory determinations about the arrest, about the administrative complaints, I'm sorry. Well, she said the complaints were similar to what was the conduct before the court. Why isn't that a reference? It's a reference, but it's not equating them with guilt, except for the one administrative complaint for which he was determined to be at fault. So, the court specifically said that she was referencing the two 2013 administrative complaints that involved illegal searches and that the conduct of those illegal searches was similar to the conduct in the charges here. But then specifically... That's talking about conduct. That's not talking about the complaint. So, it seems to me, she has drawn an inference from the administrative fact of the administrative complaint, that there was conduct as alleged in that complaint, and therefore drawn the observation that that conduct bore a similarity to the conduct here. There's no similarity to be drawn, unless you do more than reference the administrative complaint, but presume that the conduct alleged is accurate. Well, the court later clarified on page 102 of the transcript that she was specifically referring to the 2013 complaint for which Rivera was determined to be at fault. That's in paragraph 235 and 236 of the PSR. And that paragraph outlines that he was determined to be at fault for to justify an unlawful search. He did not object to that statement in the PSR. And in addition, at the start of the sentencing hearing, on page 74 to 75 of the appendix, the judge specifically asked Rivera if there was anything he wanted to correct or clarify. And he said, no, everything in the PSR is correct. So, he did have an opportunity. Yes, sir. Your explanation on page 102, she simply said, I didn't rely on any convictions. But that's not the point. She expressly said, this defendant has, when she was explaining her sentence, as I understand it, she said, this defendant has some administrative complaints, plural. And if you look at what were the administrative complaints for in the year 2013, many of those involved and were related to illegal searches, which is consistent with the information of the charges. Yes, your honor. And then later, she says that she just alluded to the complaints, in particular, the one in which he was, quote, sanctioned with suspension of employment and salary. And that's the one for which he was determined to be at fault. So, the court did reference that there were several complaints. There were two different 2013 complaints that both said in the PSR were involving illegal searches. And then the court later said she was particularly focusing on the one for which he was sanctioned suspension of employment and salary, which is the one in paragraph 236 that says he was determined to be at fault. It involved an illegal search and specifically lying to justify a warrantless search. But there she's saying what convictions, she's saying, I didn't rely on any convictions. She never disavows relying on the other administrative complaints to draw the conclusion that there was conduct similar to the conduct here. At least I'm not seeing it on page 102 that you cite us to. Well, she also on page 95 to 96 says, I'm not making any conclusory determinations, just pointing to the resemblance. But so, that's a complete non-separator. What, what resemblance, what conduct is there that could possibly resemble this conduct if you're not drawing an inference that the conduct existed? Well, for the, for the, for the administrating complaint for which Rivera was determined to be at fault, that conclusion could be drawn. And that was one of the two 2013 administrative complaints. So for that one, it would be permissible for the court to refer to the resemblance. But in addition to that, I would add that the court explained its reasons for the sentence for about eight pages of the transcript. It's banned from page 89 of the appendix and 97 of the appendix. And it was clear that the court was relying on the many different methods and means of this RICO enterprise. The administrative complaints were merely referenced later on in her explanation and were not a focal point in any way. Instead, the court repeatedly emphasized how blatant the acts of this RICO enterprise was and how damaging they were to the credibility of the police force and also to the judiciary. If your honors have no further questions about this issue or any of the others. I would just like to follow up on, on, on the questions that judges Kayada and Thompson have been asking you about, because I, I find myself a little confused. If, if the standard is that facts need to be found by a preponderance of the may have been consistent with other allegations or other proven facts, but I'm not relying on them because I'm making no findings. But here it seems to have come out sort of in the, in the opposite direction or the, or the, the statements were made in a contrary fashion. That is to say, I'm not drawing any conclusions, but they are consistent with these other facts. And I'm not what we're supposed to do with that because my instinctive reaction is that that did have an impact. So what's your best argument for that? It did not have any impact on the sentence. Well, two points when the judge said that she was not making any conclusory determinations, I believe we should take the judge at her word. In addition to that, the judge specifically referenced the 2013 complaints and in the PSR paragraph 235, there's just two of those. One of those, Rivera was determined to be at fault and the conduct did resemble the conduct in the charges here. So there would be no error if it did have an impact on the judge's sentence that she was referring to the one for which he was determined to be at fault that did resemble the charges here. But in addition to that, the court explained a wide array of different reasons for the sentence and went through act by act by act of this RICO enterprise and the many different unlawful abuses of authority that it did under the pretext of valid police action. And those reasons support the sentence here. The brief reference to the administrative complaints should not undermine the judge's otherwise lengthy explanation for the sentence, especially given that one of those administrative complaints he was determined to be at fault for and that he was determined to be at fault for. So that's what you should hear. If your honor, if your honors have no further questions, the government will rest on its briefs and respectfully request that the court affirm the sentence. Thank you. Thank you. Judge, I think that concludes the arguments in this matter. Attorney Novus and Attorney Cohen, you should disconnect from the hearing at this time.